# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 3:13-cr-00119-2 |
| | ) | **JUDGE TRAUGER** |
| | ) | |
| WILLIAM WORTHY (#2), et. al. | ) | |

## PETITION TO ENTER A PLEA OF GUILTY

I, William Madison Worthy II, respectfully represent to the Court as follows:

(1)     My true full name is William Madison Worthy II.  I was born in 1962, and I am 53 years old.  I completed 16 years of formal education including high school and college.

(2)     My lawyers are William J. Steed III and Jonathan P. Farmer.

(3)     I have received a copy of the Indictment before being called upon to plead, and I have read and discussed it with my lawyer, and I believe and feel that I understand every accusation made against me in the Indictment.

(4)     I have had sufficient opportunity to discuss with my lawyer the facts and surrounding circumstances concerning the matters mentioned in the Indictment.  My lawyer has counseled and advised with me as to the nature and cause of every accusation against me.  We have thoroughly discussed the government's case against me and my potential defenses to the government's case.  My lawyer has explained each element of the crime charged to me and what the government would offer to prove these elements beyond a reasonable doubt.

(5)     I understand the statutory penalty for each of the offenses charged:
(a)     Count One (Conspiracy - 18 U.S.C. § 371):
     i.     Not more than five (5) years imprisonment;
     ii.     Restitution in amount determined by the court (for all counts);
     iii.     Fine of up to $250,000;
     iv.     Mandatory $100 special assessment;
     v.     Term of Supervised Release of not more than three (3) years in addition to any term of imprisonment
(b)     Counts Two – Eleven, Count Fifty-Five (Mail Fraud - 18 U.S.C. § 1341):
     i.     Not more than twenty (20) years imprisonment
     ii.     Restitution in amount determined by the court (for all counts)

1

<div style="margin-left: 2em;">

    iii.    Fine of up to $250,000

    iv.    Mandatory $100 special assessment

    v.    Term of Supervised Release of not more than three (3) years in addition to any term of imprisonment

</div>

(c)    Counts Twelve – Twenty-Five (Wire Fraud - 18 U.S.C. § 1343):

    i.    Not more than twenty (20) years imprisonment

    ii.    Restitution in amount determined by the court (for all counts)

    iii.    Fine of up to $250,000

    iv.    Mandatory $100 special assessment

    v.    Term of Supervised Release of not more than three (3) years in addition to any term of imprisonment

(d)    Counts Twenty-Six - Forty
(Embezzlement from Health Care Program - 18 U.S.C. § 669):

    i.    Not more than ten (10) years imprisonment

    ii.    Restitution in amount determined by the court (for all counts)

    iii.    Fine of up to $250,000

    iv.    Mandatory $100 special assessment

    v.    Term of Supervised Release of not more than three (3) years in addition to any term of imprisonment

(e)    Counts Forty-Seven – Fifty (Money Laundering – 18 U.S.C. § 1957)

    i.    Not more than ten (10) years imprisonment

    ii.    Fine of up to $250,000

    iii.    Mandatory $100 special assessment

    iv.    Term of Supervised Release of not more than three (3) years in addition to any term of imprisonment

I understand that terms of imprisonment for convictions on more than one count may be ordered to run concurrently or consecutively with each other.

(6)    I have been advised that I will be sentenced to a sentence sufficient but not greater than necessary to satisfy the goals of sentencing specified in 18 U.S.C. § 3553(a). One consideration will be Guidelines established by the United States Sentencing Commission. I understand that these Guidelines are advisory, but that the Court must take account of the Guidelines together with other sentencing goals. My lawyer and I have discussed the calculation of the Guidelines in my case. My lawyer has given me an estimate of the Guidelines range that may apply in my case, to wit: 121 – 151 months, to be served concurrently with the term imposed in *United States v. William Madison Worthy*, Case No. 7:11-cr-487, U.S. District Court for District of South Carolina, and with further downward adjustment, pursuant to U.S.S.G. § 5G1.3(b)(1), for all time already served in imprisonment in Case No. 7:11-cr-487. I realize this is simply my lawyer's estimate. I understand that my advisory Guideline range will be calculated

<div style="text-align: center;">2</div>

by the United States Probation Officer who prepares the presentence report in my case. This estimation is subject to challenge by either me or the government, unless prohibited by a plea agreement. The final Guideline calculation will be made by the Court. I further understand that I may be sentenced to a fine to be calculated through the Guidelines. No fine will be imposed if the Judge finds me unable to pay any fine. Considered in this fine may be the amount of financial loss to the victim or gain to me as well as the costs of any confinement or probation supervision. The Court may also order that restitution be made to any victim of the offense. If I am convicted of any offense specified in 18 U.S.C. § 3663A(c), or as otherwise required by law, restitution is mandatory. I have a right to a review of my sentence by the United States Court of Appeals for the Sixth Circuit unless waived in the plea agreement.

(7)  I understand that, under 18 U.S.C. § 3561(a), I am not eligible for a sentence of probation if I receive any sentence of imprisonment at the same time on this offense or any other offense, or am convicted of a Class A or Class B felony, or the offense is one for which probation is expressly prohibited. I have been informed that under the present federal sentencing system there is no parole. I will receive only 54 days good time credit per year and it will not vest until the end of each year. I further understand that if I am sentenced to a period of supervised release and I violate the terms of that supervised release, upon revocation I could be imprisoned again.

(8)  I understand that should this plea of guilty be accepted, I will be a convicted felon in the eyes of the law for the rest of my life. This means, under present law that (a) I cannot vote in Tennessee, unless my right to vote is lawfully restored, and may not be eligible to vote in other states; (b) I cannot possess a firearm anywhere; (c) If I am presently on probation, parole, or supervised release whether state or federal, the fact that I have been convicted may be used to revoke my probation, parole or supervised release regardless of what sentence I receive on this case; (d) If I am convicted of any crime in the future, whether state or federal, this conviction may be used to increase that sentence; (e) I may have to disclose the fact that I am a convicted felon when applying for employment and such disclosure may result in my not getting some jobs and having difficulty in getting others. I understand that this list may not include all of the adverse consequences of my conviction in this case.

(9)  I understand that I can plead "NOT GUILTY" to any or all offenses charged against me, and continue to plead "NOT GUILTY", and that if I choose to plead not guilty, the Constitution guarantees me (a) the right to a speedy and public trial by jury; (b) the right not to testify and no implication of guilt would arise by my failure to do so; (c) the right to be presumed innocent until such time, if ever, that the government proves my guilt beyond a reasonable doubt to the satisfaction of a court and jury; (d) the right to see and hear all the witnesses and to cross-examine any witness who may testify against me; (e) the right to use the power and process of the court to compel the production of any evidence, including the attendance of any witnesses, in

3

my favor; and to testify in my own behalf if I choose to do so; (f) the right to have the assistance of counsel in my defense at all stages of the proceedings; (g) if I am convicted at such trial I have the right to appeal with a lawyer to assist me and the appeal will not cost me any money if I am indigent. I understand that if the Court accepts my plea that there will be no jury trial and that I will be convicted of the counts to which I plead just as if a jury found me guilty of the charges following a trial. The Court may then impose sentence upon me within the limits set forth in any plea agreement stated in paragraph (13), subject to the maximum punishments set forth in paragraph (5).

(10)    No officer or agent of any branch of government (federal, state or local), nor any other person, has guaranteed me what sentence I will receive. If there are any agreements between myself and my lawyer and the prosecution concerning my plea they are fully set forth in paragraph (13) below. I understand that even with a plea agreement no person can bind the Judge to give any particular sentence in my case. If the Judge rejects an agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(A) or (C) I will be offered the opportunity to withdraw my guilty plea. If the Judge rejects a recommendation made pursuant to Rule 11(c)(1)(B) I have no right to withdraw my plea. I understand that if the Judge decides to make a recommendation about where I should serve any incarceration that the recommendation is not a promise or a guarantee, but only a recommendation and is not binding on the Bureau of Prisons which will make the final decision (after I am sentenced) about where I will be incarcerated.

(11)    My lawyer has done all the investigation and research in this case that I have asked him to do, and has reviewed with me the discovery material provided by the Government. I am satisfied with his representation at this point.

(12)    Fully understanding my rights to plead "NOT GUILTY" and fully understanding the consequence of my plea of guilty, I wish to plead "GUILTY" and respectfully request the Court to accept my plea as follows:

Guilty to Counts One and Eighteen of the Indictment.

(13)    This plea is a result of a plea agreement between my lawyer and the prosecution under the provisions of Rule 11 of the Federal Rules of Criminal Procedure. The plea agreement is as follows:

The Plea Agreement between the parties, pursuant to Fed. R. Crim. P. 11(c)(1)(C), is submitted to the Court along with this Petition, setting forth all terms of the Agreement, in writing, in a document entitled "Plea Agreement".

(14)    I offer my plea of "GUILTY" freely and voluntarily and of my own accord; also my lawyer has explained to me, and I feel and believe I understand this petition.

4

(15)    I am not under the influence of either drugs or alcohol.

(16)    I request the Court to enter now my plea of "GUILTY" as set forth in paragraph (12) of this petition, in reliance upon my statements made in this petition.

(17)    Recognizing that the Court may reserve acceptance of this plea pending the receipt of the pre-sentence report, I agree that the pre-sentence report may be disclosed to the United States Attorney, my counsel and myself, prior to the sentencing hearing.

Signed by me in open court under the penalties of perjury in the presence of my lawyer, this the __3ʳᵈ__ day of __October__, 2015.

WILLIAM MADISON WORTHY
Defendant

5

## ACKNOWLEDGMENT OF GOVERNMENT ATTORNEY

The maximum punishment, plea, and plea agreement are accurately stated above.

_____
Sandra G. Moses
Attorney for Government

6

## CERTIFICATE OF DEFENSE COUNSEL

The undersigned, as lawyers and counselors for William Madison Worthy, hereby certify as follows:

(1) We have read and fully explained to William Madison Worthy all the accusations against him in this case;

(2) To the best of our knowledge and belief each statement set forth in the foregoing petition is accurate and true;

(3) In our opinion the plea of "GUILTY" as offered by William Madison Worthy in paragraph (12) of the foregoing petition, is voluntarily and understandingly made; and we recommend to the Court that the plea of "GUILTY" be accepted and entered as requested in paragraph (12) of the foregoing petition.

Signed by me in open court in the presence of William Madison Worthy, this ___3rd___ day of __October_____, 2015.

William J. Steed III
Attorney for the Defendant

Jonathan P. Farmer
Attorney for the Defendant

7

**O R D E R**

Good cause appearing therefore from the foregoing petition of the foregoing named defendant and the certificate of his counsel and for all proceedings heretofore had in this case, it is ORDERED that the petition be granted and the defendant's plea of "GUILTY" be accepted and entered as prayed in the petition and as recommended in the certificate of counsel.

Done in open court this ___3rd___ day of ___Nov.___, 2015.

ALETA A. TRAUGER
UNITED STATES DISTRICT JUDGE

8

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 3:13-00119 |
| v. | ) | Judge Trauger |
| | ) | |
| WILLIAM M. WORTHY, II | ) | |

## PLEA AGREEMENT

The United States of America, through David Rivera, United States Attorney for the Middle District of Tennessee, Assistant United States Attorneys Sandra G. Moses and William F. Abely, Senior Trial Attorney Nicholas Acker, U.S. Department of Justice, and defendant, William M. Worthy, II, through defendant's counsel, William J. Steed, III, and Jonathan Farmer, pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, have entered into an agreement, the terms and conditions of which are as follows:

### Charges in This Case

1.     Defendant acknowledges that he has been charged in the indictment in this case with conspiracy, mail and wire fraud, embezzlement from a health care benefit program, money laundering and forfeiture allegations in violation of Title 18, United States Code, Sections 371, 1341, 1343, 669, 1957 and 982.

2.     Defendant has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney. Defendant fully understands the nature and elements of the crimes with which he has been charged.

### Charges to Which Defendant is Pleading Guilty

3.     By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to Counts One and Eighteen of the indictment, charging conspiracy and wire fraud. In addition, as

further provided below, defendant agrees to the entry of a forfeiture judgment. After sentence has been imposed on the counts to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the indictment.

<u>Penalties</u>

4. The parties understand and agree that the offenses to which defendant will enter a plea of guilty carry the following maximum penalties: **Count One**: a term of imprisonment of not more than five years, supervised release of not more than three years, a $250,000 fine, and a $100 special assessment; and **Count Eighteen:** a term of imprisonment of not more than twenty years, supervised release of not more than three years, a $250,000 fine, and a $100 special assessment. Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court. Defendant also understands that a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future, regardless of whether the defendant currently has lawful temporary or permanent resident status.

Defendant also understands that as a result of his offenses, he is subject to forfeiture of property as alleged in the indictment.

<u>Acknowledgements and Waivers Regarding Plea of Guilty</u>

<u>Nature of Plea Agreement</u>

5. This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 3:13cr00119.

6. Defendant understands that by pleading guilty he surrenders certain trial rights, including the following:

2

a.     If defendant persisted in a plea of not guilty to the charges against him, he would have the right to a public and speedy trial. Defendant has a right to a jury trial, and the trial would be by a judge rather than a jury only if defendant, the government, and the Court all agreed to have no jury.

b.     If the trial were a jury trial, the jury would be composed of twelve laypersons selected at random. Defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause, or without cause by exercising so-called peremptory challenges. The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty. The jury would be instructed that defendant is presumed innocent; that the government bears the burden of proving defendant guilty of the charges beyond a reasonable doubt; and that it must consider each count of the indictment against defendant separately.

c.     If the trial were held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded of defendant's guilty beyond a reasonable doubt.

d.     At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them. In turn, defendant could present witnesses and other evidence on his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court.

e.  At a trial, defendant would have a privilege against self-incrimination so that he could testify or decline to testify, and no inference of guilt could be drawn from his refusal to testify.

7.  Defendant understands that by pleading guilty he is waiving all of the trial rights set forth in the prior paragraph. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

<center>Factual Basis</center>

8.  Defendant will plead guilty because he is in fact guilty of charges contained in Counts One and Eighteen of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

With respect to Count One of the indictment, between January 2008 and March 2010, in the Middle District of Tennessee and elsewhere, the defendant conspired with his co-defendants to commit mail and wire fraud; theft and embezzlement of funds from a health care benefit program; and money laundering. In furtherance of the conspiracy, the defendant and his co-defendants devised a scheme and artifice to defraud individuals and businesses who purchased health care benefit coverage through plans advertised and promoted by American Trade Association (ATA), Serve America (variously known as Serve America Assurance, Serve America Ltd., Serve America Assurance Ltd, Serve America Assurance Ltd. Co.), Affinity Group Benefits Association Incorporated (AGBAI) and Real Benefits Association LLC (RBA), and to obtain money and property by means of false pretenses, misrepresentations and promises. To further the scheme, the defendant and his co-defendants used the United States Postal Service, private interstate carriers and interstate wires. For example, the defendant and his co-conspirators used the mails to collect premium payments and mail fulfillment packages to

<center>4</center>

victim/health insurance enrollees. Additionally, the defendant and his co-defendants used interstate wires to transfer premium payments from the SDS bank accounts in Tennessee to bank accounts controlled by defendant William Worthy in South Carolina. In addition, the defendant's co-defendants used infomercials and televised advertisements to solicit victims to enroll in bogus healthcare benefits programs. The defendant and his co-defendants also knowingly and willfully converted health care benefit plan funds to their own use rather than the rightful owner, and intentionally misapplied moneys, funds and premiums exceeding $100 in value of a health care benefit program affecting commerce.

Specifically, the defendant and his co-conspirators used Smart Data Solutions, LLC ("SDS"), a Tennessee limited liability company with its principal place of business located in Springfield, Tennessee, as a Third Party Administrator to market, in the Middle District of Tennessee and elsewhere, multiple levels of unauthorized health insurance plans which purposely evaded state and federal regulatory requirements. The plans, labeled as certificates under various master policies, included a master policy issued to Affinity Group Benefits Association Incorporated ("AGBAI") by Beema Insurance Company, a master policy issued to Real Benefits Association LLC ("RBA") by Serve America Assurance Ltd. Co. ("Serve America") and a master policy issued to American Trade Association (ATA) by Serve America. Beema-Pakistan Company Limited (Beema) is a foreign domiciled public limited company wholly owned by Pakistani nationals. Beema was a general insurance company that was not licensed to issue policies of insurance as an insurance company in the State of Tennessee or in any other state. Serve America was a purported wholly owned subsidiary of Beema (referred to as a captive). Serve America was essentially a "shell" company with no employees, no telephone number, no point of contact and no fixed business location. Defendant and his co-

5

conspirators knew that Serve America had never possessed a Certificate of Authority to act as an Administrator in the State of Tennessee, and that Serve America had never been licensed to issue policies of insurance as an insurance company in Tennessee or any other state. Victim insurance enrollees were directed to communicate with Serve America through the SDS address. The defendant and his co-conspirators promoted and caused the sale of unauthorized health care benefit plans purportedly underwritten by Beema and Serve America through ATA and RBA.

Defendant was aware that his co-conspirators marketed the fraudulent health care benefit coverage and that the marketing eventually reached more than 17,000 victim insurance enrollees in various states, including the Middle District of Tennessee. SDS operations were located in a building owned by defendant Bart Posey located at 4676 Highway 41 North, Springfield, Tennessee. SDS leased space at Highway 41 North from defendant Bart Posey, doing business as 41 & Main. Defendant Bart Posey owned SDS and ATA Arkansas and was director of ATA Indiana. Defendant Angela Posey was a partner/secretary of SDS and a director of ATA Indiana. Defendant Richard Bachman served at various times as Vice-President of SDS and ATA Indiana. SDS collected premiums from victim insurance enrollees primarily by three methods of payment: 1) direct payments from victim insurance enrollees and employer groups generally by check or money orders which were then deposited into accounts at either First State Bank (number ending *2841 in the name of SDS LLC) or F&M Bank (number ending *0201, in the name of Smart Data Solutions LLC), both controlled by Bart and Angela Posey; 2) direct bank transfer payments from victim insurance enrollees and employer groups to the SDS accounts described above; or 3) collection of payments from victim insurance enrollees and employer groups by third party payment processors (including PayLogix and CITM). On May 12, 2009, defendant Worthy committed an overt act in furtherance of the conspiracy by signing a Business

6

Signature Card adding Worthy as an authorized signer for the bank account ending *850201 in the name of Nationwide Administrators LLC (Nationwide) at First Citizens Bank & Trust Co., Inc., in Blythewood, South Carolina. At the same time, the name of the account was changed to Nationwide Administrators LLC/Beema Premium.

Defendant was aware that his co-conspirators caused SDS, in its role as TPA, to contract with national telemarketing companies to promote the sale of unauthorized health care benefit plans through memberships in ATA and RBA, thus circumventing state regulations by claiming that ATA and RBA were labor organizations under the authority of the U.S. Department of Labor. Neither ATA nor RBA qualified as a labor organization exempted from state regulatory authority. The defendant and his co-conspirators caused the premiums collected by third party payment processors to be distributed as commissions to the marketers with the remainder of the premiums and fees transferred to SDS via wire, or by checks sent through the U.S. mail or by interstate carrier, for deposit into the above-described SDS accounts. Defendant and his co-conspirators caused a portion of the premiums deposited with SDS to be transferred via wire to Nationwide account ending *850201 controlled by defendant William Worthy and Kathleen Cauthen at First Citizens Bank, Blythewood, South Carolina. These funds were intended to represent payments to a non-existent underwriter, but were instead primarily converted to the personal use of defendant Worthy and Kathleen Cauthen.

Defendant and his co-conspirators embezzled funds from the premiums paid by the participants that were intended to be used to pay eligible health care claims and did not pay the majority of the claims. In the process, the defendants diverted more than $5.4 million in premiums for their personal use, both directly and indirectly, through payments made to SDS.

7

With respect to Count Eighteen of the indictment, from in or around January 2008 and continuing through in or around March 2010, in the Middle District of Tennessee, the defendant and his co-defendants devised a scheme and artifice to defraud individuals and businesses who purchased health care benefit coverage through plans offered by ATA, Serve America, AGBAI and RBA, and to obtain money and property by false pretenses, representations and promises, and in furtherance of the scheme used interstate wires. Specifically, the defendant and his co-conspirators offered health insurance to individuals and businesses which were purportedly underwritten by Beema/Serve America knowing that neither Beema nor Serve America was licensed to issue insurance policies in Tennessee or any other state and, in fact, Beema/Serve America did not underwrite the health care benefit coverage offered by defendants. Further, on April 20, 2009, defendant and his co-defendants caused to be transmitted an interstate wire transferring $240,002.74 from the SDS First State Bank account ending *2841 in Springfield, Tennessee, to the Nationwide First Citizens Bank premium account ending in *850201 in Blythewood, South Carolina.

a. Defendant also acknowledges that for the purpose of determining the applicable advisory sentencing range under the United States Sentencing Guidelines (hereinafter "U.S.S.G."), the following conduct, to which he stipulates, constitutes relevant conduct under U.S.S.G. § 1B1.3: The offense of embezzlement from an insurance business engaged in interstate commerce to which the defendant pleaded guilty on October 20, 2011, and was sentenced on March 20, 2012, in *United States v. William Madison Worthy*, Criminal Case Number 7:11-487 (D. South Carolina). Specifically, from March 2004 to approximately July 2006, the defendant, doing business as Consumer Health Solutions, became the third party administrator for the Fellowship Services Church Plan (the Church Plan), a multi-employer

8

welfare arrangement designed to provide group insurance policies, to include health insurance, to church pastors and employees of various denominations. During that time period, the defendant falsely represented to potential purchasers of the Church Plan that the coverage provided pursuant to the plan was fully funded and insured when, in fact, it was never a fully funded and insured plan. Approximately $3.5 million in premiums were collected with only approximately $1 million claims paid, resulting in an approximate loss amount of $2.5 million.

b.     Defendant, for purposes of determining the applicable advisory sentencing range under the U.S.S.G. and pursuant to U.S.S.G. § 1B1.2, stipulates to an actual loss amount related to the relevant conduct described above as $2,500,000 and the actual loss in this case of $7,331,338.86 totaling $9,831,338.86. The defendant further stipulates that if this case were to go to trial the United States would be able to prove that at least 25 victims suffered substantial financial hardship as a result of the offenses committed by the defendant and his co-defendants in this case.

This statement of facts is provided to assist the Court in determining whether a factual basis exists for defendant's plea of guilty and criminal forfeiture and to assess relevant conduct for purposes of the United States Sentencing Guidelines. The statement of facts does not contain each and every fact known to defendant and to the United States concerning defendant's and/or others' involvement in the offense conduct and other matters.

<div align="center">Sentencing Guidelines Calculations</div>

9.     The parties understand that the Court will take account of the U.S.S.G., together with the other sentencing factors set forth at 18 U.S.C. § 3553(a), and will consider the U.S.S.G. advisory sentencing range in imposing defendant's sentence. The parties agree that the U.S.S.G. to be considered in this case are those effective November 1, 2015.

10. For purposes of determining the U.S.S.G. advisory sentencing range, the United States and defendant agree, pursuant to Rule 11(c)(1)(C), the following:

    a. Offense Level Calculations.

        i. The base offense level for both counts of conviction is 7, pursuant to U.S.S.G. § 2B1.1.

        ii. The offense, including relevant conduct, involved a loss of approximately $9,831,338.86 requiring a twenty level increase pursuant to U.S.S.G. § 2B1.1(b)(1)(K), raising the adjusted offense level to 27.

        iii. The offense resulted in substantial financial hardship to at least 25 victims requiring a six level increase pursuant to U.S.S.G. § 2B1.1(b)(2)(C), raising the adjusted offense level to 33.

        iv. The offense involved sophisticated means and defendant intentionally engaged in and caused the conduct constituting sophisticated means requiring a two level increase pursuant to U.S.S.G. § 2B1.1(b)(10)(C), raising the adjusted offense level to 35.

        v. Assuming defendant clearly demonstrates acceptance of responsibility, to the satisfaction of the government, through his allocution and subsequent conduct prior to the imposition of sentence, a 2-level reduction will be warranted, pursuant to U.S.S.G. § 3E1.1(a). Furthermore, assuming defendant accepts responsibility as described in the previous sentence, the United States will move for an additional one-level reduction pursuant to U.S.S.G § 3E1.1(b), because defendant will have given timely notice of his intention to enter a plea of guilty, thereby permitting the

government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently.

      b.    **Criminal History Category.** The parties have no agreement regarding the defendant's criminal history category.

      c.    **Recommended Offense Level.** Therefore, the parties agree to recommend to the Court a final offense level of 32 (the "Recommended Offense Level"). Defendant understands that the offense level as ultimately determined by the Court (the "court-determined offense level)" may be different from the Recommended Offense Level. Defendant likewise understands that the guidelines range as ultimately determined by the Court (the "court-determined guidelines range") may be based on an offense level different from the Recommended Offense Level.

<div align="center">Agreements Relating to Sentencing</div>

11.    This Plea Agreement is governed, in part, by Federal Rule of Criminal Procedure 11(c)(1)(C). That is, the parties have agreed that the sentence imposed by the Court shall include a term of imprisonment of 135 months in the custody of the Bureau of Prisons. The parties also agree that the defendant's sentence must be adjusted for any period of imprisonment already served on the undischarged term of imprisonment ordered in *United States v. William Madison Worthy*, Criminal Case Number 7:11cr487 in the United States District Court for the District of South Carolina, pursuant to USSG § 5G1.3(b)(1). The parties further agree that the sentence imposed in the present case must be imposed to run concurrently to the undischarged term of imprisonment imposed in the South Carolina case described above pursuant to USSG § 5G1.3(b)(1).

12. Other than the terms agreed terms agreed upon in paragraph 11 above, the parties have agreed that the Court remains free to impose the sentence it deems appropriate. If the Court accepts and imposes the agreed term of incarceration set forth herein, defendant may not withdraw this plea as a matter of right under Federal Rule of Criminal Procedure 11(d). If, however, the Court refuses to impose the agreed term of incarceration, thereby rejecting the Plea Agreement, or otherwise refuses to accept defendant's plea of guilty, either party shall have the right to withdraw from this Plea Agreement.

13. Regarding restitution, the parties acknowledge that the amount of restitution owed to victims is $6,524,888.86, and that pursuant to Title 18, United States Code, Section 3663A, the Court must order defendant to make restitution in this amount, minus any credit for funds repaid prior to sentencing. Unless the Court orders otherwise, restitution shall be due immediately.

14. Defendant agrees to pay the special assessment of $200 at or before the time of sentencing to the Clerk of the U.S. District Court.

### Forfeiture

15. Forfeiture Allegation One requires that if the defendant is convicted of Count One then defendant is liable to the United States in the amount of at least $6,524,888.86 United States currency, which funds are subject to forfeiture because these funds constitute or are derived from gross proceeds traceable to violations of Title 18, United States Code, Section 371 (conspiracy). Forfeiture Allegation Three requires that if the defendant is convicted of Count Eighteen then the defendant is liable to the United Sates in the amount of $6,524,888.86, which funds are subject to forfeiture because these funds constitute or are derived, directly or indirectly, from gross proceeds traceable to the scheme or artifice to defraud in a violation of Title 18, United States Code, Section

12

1343 (wire fraud). Further, defendant has subjected real and personal property to forfeiture, namely:

A. PERSONALTY:

    a. 2010 Chevrolet Camaro 2SS Coupe, VIN 2G1FT1EW0A9145379 or any proceeds from the sale thereof (hereinafter "Subject Camaro");

    b. 2005 Harley Davidson Road King Motorcycle bearing VIN 1HD1FXV185Y677771 or any proceeds from the sale thereof (hereinafter "Subject Harley");

B. REAL PROPERTY:

    a. Commonly known as 814 Pitt Avenue, Springfield, Robertson County, Tennessee and more particularly described in the indictment or any proceeds from the sale thereof.

    b. Commonly known as 4676 Highway 41 North, Springfield, Robertson County, Tennessee and more particularly described in the indictment or any proceeds from the sale thereof.

    c. Commonly known as 209 New Chapel Road, Springfield, Robertson County, Tennessee and more particularly described in the indictment or any proceeds from the sale thereof.

    d. Commonly known as 204 Lawrence Lane, Springfield, Robertson County, Tennessee and more particularly described in the indictment or any proceeds from the sale thereof.

(Four real properties hereinafter collectively "Subject Real Properties" and Subject Camaro, Subject Harley and Subject Real Properties hereinafter collectively "Subject Property"). By entry of a guilty plea to Counts One and Eighteen of the indictment, defendant acknowledges that the Subject Property identified above is subject to forfeiture.

16. Defendant acknowledges that the Subject Property is also subject to forfeiture in a collateral civil case known as United States of America v. (1) Four Real Properties Commonly Known as 814 Pitt Avenue, Springfield, Robertson County, Tennessee; 4676 Highway 41N, Springfield Tennessee; 204 Lawrence Lane, Springfield, Tennessee; 209 New Chapel Road,

13

Springfield, Tennessee; and Proceeds from Any Sale of the Four Real Properties By the Current Owners; (2) 2010 Chevrolet Camaro 2SS Coupe Bearing VIN #2G1FT1EW0A9145379, and (3) 2005 Harley Davidson Road King Motorcycle bearing VIN# 1HD1FXV185Y677771 under Civil Action No. 3:11CV00090, (hereinafter "Civil Action") alleging that this property was subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C), which authorizes forfeiture of any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. §§ 371 and 1341. Defendant does not believe he has any interest in the Subject Camaro, the Subject Harley or the Subject Real Properties, but he nonetheless relinquishes all right, title, and interest he may have or may have had in the Subject Property, and hereby extinguishes any interest or claim he may have in the Subject Property. Defendant agrees to entry of a judgment of forfeiture against the Subject Property in the Civil Action.

17.     Defendant also agrees to waive any and all constitutional and statutory challenges to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. Defendant agrees to take steps as required by the United States to pass clear title to the forfeitable assets to the United States. Defendant also agrees to the entry of a Preliminary Order of Forfeiture as to the Subject Property if deemed necessary by the United States.

18.     The parties have stipulated to a loss amount in this case of $6,524,888.86 as this amount constitutes or is derived from gross proceeds traceable to the violations charged in Counts One and Eighteen of the Indictment.

19.     Defendant agrees to the entry of an order of forfeiture consisting of money judgments in the amount of $6,524,888.86 on Counts One and Eighteen, in that this property is subject to forfeiture because it constitutes or is derived from gross proceeds traceable to the violations charged in

14

Counts One and Eighteen of the Indictment, and he further agrees to be jointly and severally liable with any co-defendants who may be sentenced to forfeiture for said amount.

20.     Defendant and the United States agree that any payment voluntary made toward the restitution will reduce the money judgments accordingly, and Defendant will cooperate and assist the United States in its efforts to recover the proceeds of the crime.

21.     Defendant acknowledges that as a result of his act(s) or omission(s), the proceeds of his crime of conviction which are subject to forfeiture:

    a.      cannot be located upon exercise of due diligence;

    b.      has been transferred or sold to, or deposited with, a third party;

    c.      has been placed beyond the jurisdiction of the Court;

    d.      has been substantially diminished in value; or

    e.      has been commingled with other property, which cannot be divided without difficulty.

22.     Defendant further acknowledges that the United States is entitled to forfeiture of substitute property in the amount of the proceeds of the crime and therefore agrees to the forfeiture of substitute assets and entry of an order allowing the United States to conduct any discovery proper in identifying, locating or disposing of the property subject to forfeiture in accordance with Fed. R. Crim. P. 32.2 (c) and 28 U.S.C. §§ 3001(a)(1) and 3015 et seq. and will work with the United States Attorney's Office and the Fraud Section of the Criminal Division of the United States Department of Justice to locate substitute assets.

23.     Defendant further agrees to cooperate fully and to execute any supplementary documents and to take any additional actions that may be necessary or appropriate to locate any substitute assets.

24.     Defendant further authorizes the United States Probation and Pretrial Services Office (U.S.P.O.) to release the Presentence Investigative Report and all financial documents pertaining to Defendant to the Asset Forfeiture Unit of the United States Attorney's Office for the Middle District of Tennessee.

25.     Defendant further authorizes the release of his financial statement submitted to the Court for pro bono attorney.

26.     Defendant further authorizes the Internal Revenue Service to Release his tax returns for the period of 2008 through 2014.

27.     Defendant agrees not to open new lines of credit without prior authorization from United States Probation and Pretrial Services.

28.     Defendant agrees to waive all appellate rights concerning forfeiture of the Subject Property and the entry of the money judgment and all matters related thereto.

29.     Defendant understands that forfeiture of the property described herein shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon defendant in addition to the forfeiture judgment.

<u>Presentence Investigation Report/Post-Sentence Supervision</u>

30.     Defendant understands that the United States Attorney's Office, in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing, shall fully apprise the District Court and the United States Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, as well as any related matters. The government will make known all matters in aggravation and mitigation relevant to the issue of sentencing.

31.     Defendant agrees to execute truthfully and completely a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the

16

United States Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the Probation Officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1 and enhancement of his sentence for obstruction of justice under U.S.S.G. § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001, or as a contempt of the Court.

32.     This Plea Agreement concerns criminal liability only. Except as expressly set forth in this Plea Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Plea Agreement are limited to the United States Attorney's Office for the Middle District of Tennessee and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Plea Agreement.

33.     Defendant understands that nothing in this Plea Agreement shall limit the Internal Revenue Service (IRS) in its collection of any taxes, interest, or penalties from defendant and his spouse or defendant's partnership or corporations.

<div align="center">Entry of Guilty Plea</div>

34.     The parties jointly request that, the Court accept the defendant's plea of guilty and this plea agreement at the time of the plea hearing.

<div align="center">Waiver of Appellate Rights</div>

35.     Regarding the issue of guilt, defendant hereby waives all (i) rights to appeal any issue bearing on the determination of whether he is guilty of the crime(s) to which he is agreeing to plead

<div align="center">17</div>

guilty; and (ii) trial rights that might have been available if he exercised his right to go to trial. Regarding sentencing, Defendant is aware that 18 U.S.C. § 3742 generally affords a defendant the right to appeal the sentence imposed. Acknowledging this, defendant knowingly waives the right to appeal any sentence within or below the guideline range associated with the Offense Level when combined with defendant's criminal history category as determined by the Court. Defendant also knowingly waives the right to challenge the sentence imposed in any collateral attack, including, but not limited to, a motion brought pursuant to 28 U.S.C. § 2255 and/or § 2241, and/or 18 U.S.C. § 3582(c). However, no waiver of the right to appeal, or to challenge the adjudication of guilt or the sentence imposed in any collateral attack, shall apply to a claim of involuntariness, prosecutorial misconduct, or ineffective assistance of counsel. Likewise, the government waives the right to appeal any sentence within or above the guideline range associated with the Offense Level when combined with defendant's criminal history category as determined by the Court.

### Other Terms

36.     Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

37.     Defendant agrees to cooperate with the IRS in any tax examination or audit of defendant and his wife and defendant's partnerships or corporations that directly or indirectly relates to or arises out of the course of conduct defendant has acknowledged in this Plea Agreement, by transmitting to the IRS original records or copies thereof, and any additional books and records that the IRS may request. Nothing in this paragraph precludes defendant from asserting any legal or factual defense to taxes, interest, and penalties that may be assessed by the IRS.

38.     Should defendant engage in additional criminal activity after he has pled guilty but prior to sentencing, defendant shall be considered to have breached this Plea Agreement, and the government at its option may void this Plea Agreement.

## Conclusion

39.     Defendant understands that the indictment and this Plea Agreement have been or will be filed with the Court, will become matters of public record, and may be disclosed to any person.

40.     Defendant understands that his compliance with each part of this Plea Agreement extends until such time as he is sentenced, and failure to abide by any term of the Plea Agreement is a violation of the Plea Agreement. Defendant further understands that in the event he violates this Plea Agreement, the government, at its option, may move to vacate the Plea Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Plea Agreement, or may require defendant's specific performance of this Plea Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Plea Agreement, or defendant breaches any of its terms and the government elects to void the Plea Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Plea Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Plea Agreement and the commencement of such prosecutions.

41.     Defendant and his attorney acknowledge that no threats have been made to cause defendant to plead guilty.

19

42.     No promises, agreements, or conditions have been entered into other than those set forth in this Plea Agreement, and none will be entered into unless memorialized in writing and signed by all of the parties listed below. The parties further understand and agree that defendant shall not be entitled to any benefit in exchange for his cooperation other than the parties' agreement to the sentence outlined above in Paragraph 11.

43.     <u>Defendant's Signature:</u>  I hereby agree that I have consulted with my attorney and fully understand all rights with respect to the pending indictment.  Further, I fully understand all rights with respect to the provisions of the Sentencing Guidelines that may apply in my case. I have read this Plea Agreement and carefully reviewed every part of it with my attorney. I understand this Plea Agreement, and I voluntarily agree to it.

Date:  10|23|15

WILLIAM M. WORTHY, II
Defendant

44.     <u>Defense Counsel Signature:</u>  I am counsel for defendant in this case. I have fully explained to defendant his rights with respect to the pending indictment. Further, I have reviewed the provisions of the Sentencing Guidelines and Policy Statements, and I have fully explained to defendant the provisions of those guidelines that may apply in this case.  I have reviewed carefully every part of this Plea Agreement with defendant.  To my knowledge, defendant's decision to enter into this Plea Agreement is an informed and voluntary one.

Date:  10|23|15

WILLIAM J. STEED, III
Attorney for Defendant

JONATHAN FARMER
Attorney for Defendant

20

Respectfully submitted,

DAVID RIVERA
United States Attorney

BY: SANDRA G. MOSES
Assistant U. S. Attorney

BY: WILLIAM F. ABELY
Assistant U. S. Attorney

By: JOHN K. WEBB
Deputy Chief
United States Attorney's Office
Middle District of Tennessee

ANDREW WEISSMANN
Chief, Fraud Section
Criminal Division
United States Department of Justice

BY: NICHOLAS ACKER
Senior Trial Attorney
Criminal Division, Fraud Section
U.S. Department of Justice

21